**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DERRICK GARY et al., | : | |
| Plaintiffs, | : | Civil No. 10-886 (NLH) |
| v. | : | |
| MR. CHARLES ALBINO et al., | : | **O P I N I O N** |
| Defendants. | : | |

**Hillman**, District Judge:

   This matter comes before the Court upon submission of a civil complaint ("Complaint"), see Docket Entry No. 1, and an application to proceed in forma pauperis ("IFP"). See Docket Entry No. 1-1.  The Complaint names, as Plaintiffs in his matter, three individuals: (a) Derrick Gary ("Gary"); (b) William Boid ("Boid"); and (c) Mike McKinney ("McKinney"). See Docket Entry No. 1, at 1.  However, the Complaint is not signed by either Boid or McKinney, see id, at 7, and the allegations stated in the Complaint seem to focus solely on Gary (asserting that Gary is concerned about potential disciplinary sanction for his refusal to participate in a certain program, which Gary asserts to be in conflict with his religious beliefs). See id. at 6.  Similarly, the IFP application that accompanies the Complaint includes only Gary's affidavit of poverty and Gary's six-month prison account statement.  See Docket Entry No. 1-1.  Yet, the Complaint

suggests Plaintiffs' interest to proceed as co-plaintiffs in this matter and to state each Plaintiffs' claims.

For the reasons stated below, Plaintiffs' application for joinder will be denied.  However, out of an abundance of caution and in order to preserve the timeliness of Boid and McKinney's claims, if such claims exist and were intended to be advanced, the Court will direct the Clerk to open separate matters for Boid and McKinney.

The Court will reserve the instant matter for Gary and will grant Gary IFP status to prosecute his claims.  The Court will also allow Gary an opportunity to submit an amended complaint stating his claims in accordance with the requirements of Federal Rules of Civil Procedure Rule 8, and will similarly allow Boid and McKinney to submit their amended complaints (stating their respective claims) and their respective IFP applications.

**I.   JOINDER**

    **A.   IFP Requirements**

The Clerk will not file a civil rights complaint unless the person seeking relief pays the entire applicable filing fee in advance or the person applies for and is granted in forma pauperis status pursuant to 28 U.S.C. § 1915.  See Local Civil R. 5.1(f).  The filing fee for a civil rights complaint is $350.00.  See 28 U.S.C. § 1914(a).  If a prisoner seeks permission to file a civil rights complaint in forma pauperis, the Prison Litigation

2

Reform Act ("PLRA") requires the prisoner to file a complete application. See 28 U.S.C. § 1915(a)(2). Specifically, under Section 1915, a prisoner seeking to bring a civil action in forma pauperis must submit an affidavit, including a statement of all assets, which states that the prisoner is unable to pay the fee. See 28 U.S.C. § 1915(a)(1). The prisoner also must submit a certified copy of his inmate trust fund account statement for the six-month period immediately preceding the filing of his complaint. See 28 U.S.C. § 1915(a)(2). The prisoner must obtain this certified statement from the appropriate official of each prison at which he was or is confined. See id.; see also Tyson v. Youth Ventures, L.L.C., 42 Fed. App'x 221 (10th Cir. 2002); Johnson v. United States, 79 Fed. Cl. 769 (2007).

The PLRA further provides that, if the prisoner is granted permission to file the complaint in forma pauperis, then the Court is required to assess the $350.00 filing fee against the prisoner and collect the fee by directing the agency having custody of the prisoner to deduct installment payments from the prisoner's prison account equal to 20% of the preceding month's income credited to the account for each month that the balance of the account exceeds $10.00. See 28 U.S.C. § 1915(b). In addition, if the prisoner is granted permission to proceed in forma pauperis, then the PLRA requires this Court to screen the complaint for dismissal and to dismiss any claim that is

3

frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an defendant who is immune from such relief.

The PLRA also provides that, if a prisoner has, on three or more occasions while incarcerated, brought an action or appeal in a federal court that was dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from immune defendants (that is, incurred three "strikes"), then the prisoner may not bring another action in forma pauperis unless he is in imminent danger of serious physical injury. See 28 U.S.C. § 1915(g).

Here, all Plaintiffs appear to be prisoners. However, only Gary submitted his complete IFP, while Boid and McKinney both failed to pay their filing fees and to submit their IFP applications. Consequently, even if the Court were to construe the Complaint as individually submitted by each Plaintiff, the Court would not be able to order filing of the Complaint as to Boid or McKinney who did not submit their IFP applications. Wwith regard to them, the in forma pauperis status would be denied.[1] The Court cannot grant IFP status to Plaintiffs collectively, as joined co-plaintiffs.

---

[1] Such denial would be without prejudice to timely curing this deficiency.

4

**B.    Collection of Filing Fee and the "Strike" Aspect**

The Court of Appeals for the Third Circuit provided district courts with detailed guidance as to the issue of filing fee collection within the context of joinder of plaintiffs.

Specifically, in Hagan v. Rogers, 570 F.3d 146 (3d Cir. 2009), our Court of Appeals held that in forma pauperis prisoners are not categorically barred from joining as plaintiffs under Rule 20 of the Federal Rules of Civil Procedure.  However, where the entire $350 filing fee has not been prepaid, the full $350 filing fee must be assessed against each in forma pauperis prisoner co-plaintiff who is permitted to join, i.e., the filing fee should be assessed as though each such prisoner were proceeding individually.  See Hagan, 570 F.3d at 150. Accordingly, if all Plaintiffs submit complete IFP applications and this matter proceeds past sua sponte dismissal as a joint action of Plaintiffs, each Plaintiff would be assessed a full $350 filing fee,[2] and a dismissal of this action as frivolous, malicious, for failure to state a claim or for asserting a claim against an entity immune from § 1983 suit would be counted as a "strike" against each Plaintiff.  Moreover, as noted supra, Plaintiffs' joint action would be able to proceed IFP only if all three Plaintiffs duly submit their complete IFP applications.

---

[2]  In other words, since there are three Plaintiffs, the total fee assesses would be three times $350, that is, $1,050.

5

Recognizing that Plaintiffs, being pro se litigants, might be unaware of the above-discussed filing fee and "strike"-incurring aspects, the Court finds it warranted to advise Plaintiff of the applicable legal regime and allow each Plaintiff an opportunity to make an informed personal decision as to whether (and how) each Plaintiff wishes to raise his claims.

**C. The Allegations in the Complaint**

In Hagan, 570 F.3d 146, the Court of Appeals addressed certain considerations applicable to civil cases in which multiple prisoner-plaintiffs seek to join in one action pursuant to Rule 20.[3]

Rule 20 of the Federal Rules of Civil Procedure provides the following regarding permissive joinder of parties:

> (1) Plaintiffs. Persons may join in one action as plaintiffs if:
>     (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>     (B) any question of law or fact common to all plaintiffs will arise in the action.
> (2) Defendants. Persons ... may be joined in one action as defendants if:
>     (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same

---

[3] "In exercising its discretion [whether to permit joinder], the District Court must provide a reasoned analysis that comports with the requirements of the Rule, and that is based on the specific fact pattern presented by the plaintiffs and claims before the court." Hagan, 570 F.3d at 157.

6

>     transaction, occurrence, or series of
>     transactions or occurrences; and
> (B) any question of law or fact common to all
>     defendants will arise in the action.

Fed. R. Civ. P. 20(a).

The requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy. See Swan v. Ray, 293 F.3d 1252, 1253 (11th Cir. 2002). However, the policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit. See, e.g., Pruden v. SCI Camp Hill, 252 Fed. App'x 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007); Coughlin v. Rogers, 130 F.3d 1348 (9th Cir. 1997)

Moreover, Rule 21 of the Federal Rules of Civil Procedure provides that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Similarly, a district court has broad discretion in deciding whether to sever a party or claim pursuant to Rule 21. Although Rule 21 is most commonly invoked to sever parties improperly joined under Rule 20, "the Rule may also be invoked to prevent prejudice or promote judicial efficiency." Lopez v. City of Irvington, 2008 WL 565776, *2 (D.N.J. 2008); see also Sporia v. Pennsylvania Greyhound Lines, Inc., 143 F.2d 105 (3d Cir. 1944) (not limiting Rule 21 severance to cases of misjoinder); Wyndham Assoc. v. Bintliff, 398 F.2d 614 (2d Cir.) (same, citing Sporia), cert. denied, 393 U.S. 977

7

(1968); Rohr v. Metropolitan Ins. & Cas. Co., 2007 WL 163037 (E.D. La. Jan. 17, 2007) (court may also consider whether jury confusion would result from the volume of evidence if the plaintiffs were joined); 4 James Wm. Moore et al., Moore's Federal Practice § 21.02(1) (3d ed. 2007) (courts may issue severance orders under Rule 21, even in the absence of misjoinder and non-joinder of parties, "to construct a case for the efficient administration of justice").

Specific factors to be considered in determining whether severance is warranted include: "(1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted, and (4) whether the party requesting severance will be prejudiced if it is not granted." German v. Federal Home Loan Mortgage Corp., 896 F. Supp. 1385, 1400 (S.D.N.Y. 1995).

In addition, a district court has the inherent power "'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" United States v. Colomb, 419 F.3d 292, 299 (5th Cir. 2005) (quoting Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)). "A court's inherent power to manage its caseload, control its docket, and regulate the conduct of attorneys before it, provides

8

authority to fashion tools that aid the court in getting on with the business of deciding cases." Eash v. Riggins Trucking, Inc., 757 F.2d 557, 567 (3d Cir. 1985).

Here, the Complaint asserts claims that seem to be unique to Gary, and the Court has no reason to believe that either Boid or McKinney have similar claims based on similar circumstances or related events.[4]  While, "[u]nder the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties," United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966) (footnote omitted), "[i]n making a joinder decision, the district court is guided by the underlying purpose of joinder, which is to 'promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits.'" Swan, 293 F.3d at 1253 (quoting Alexander v. Fulton County, Georgia, 207 F.3d 1303, 1323 (11th Cir. 2000)).  "[T]he court has discretion to deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense or delay." Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1652 (3d ed. 2009)

---

[4] Rule 11(a) of the Federal Rules of Civil Procedure requires each pro se plaintiff to sign every pleading, written motion, or other paper submitted to the Court with respect to his claims.  Here, however, neither Boid nor McKinney signed the Complaint.  Therefore, the Court has no means of establishing that either Boid or McKinney have any claims or experienced any circumstances similar to those of Gary.

9

(citations omitted); see also Chavez v. Illinois State Police, 251 F.3d 612, 632 (7th Cir. 2001) (a district court's discretion with respect to joinder "allows a trial court to consider, in addition to the requirements of Rule 20, 'other relevant factors in a case in order to determine whether the permissive joinder of a party will comport with the principles of fundamental fairness'" (citations omitted)).

In this matter, Gary's allegations are too vague and speculative to support a finding that a joinder of all these claims would foster the objectives of the Rule; rather, it is likely to result in undue prejudice, unwarranted expense and/or unnecessary delay.[5] Simply put, the claims vaguely sketched in the Complaint do not appear appropriate for joinder,[6] cf. Pope v.

---

[5] Rule 5 requires service of certain enumerated papers on every party, and would require service by the co-plaintiffs of such documents on every other co-plaintiff. Once convicted, an inmate can be relocated at any time. See, e.g., Olim v. Wakinekona, 461 U.S. 238, 245-46 (1983). Relocation of the co-plaintiffs here would impose costly and inefficient signing and service requirements.

[6] Moreover, Title 42 Section 1997e(a) provides that, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion of administrative remedies by one prisoner does not meet the exhaustion requirement for multiple prisoner plaintiffs seeking to join in one action; joinder may not be appropriate where a separate determination is required as to whether each co-plaintiff has complied with the exhaustion requirement. See, e.g., Lilly v. Ozmint, Civil No. 07-1932, 2007 WL 2022190, *2 (D.S.C. July 11, 2007); Worthen v. Oklahoma Dept.
(continued...)

10

Miller, Civil No. 07-0284, 2007 WL 2427078 (W.D. Okla. Aug. 21, 2007) (not appropriate to join access-to-courts claims and Eighth Amendment medical-care and conditions-of-confinement claims). Proceeding with separate litigation for each Plaintiff under the same case number would be distracting at best -- and costly, confusing, and grossly inefficient at worst. See Johnson-Bey v. Indiana Department of Corrections, Civil No. 09-0249, 2009 WL 1691150 (N.D. Ind. June 16, 2009); Steward v. Mississippi, Civil No. 07-0184, 2007 WL 4375210 (S.D. Miss. Dec. 12, 2007).

Thus, if the Court construes the Complaint as an implied application for joinder of Plaintiffs, such application must be denied.[7] Plaintiffs, therefore, will be provided with their individual index matters and will be directed to file their amended complaints stating their own, individual claims.

## II. PLEADING REQUIREMENTS

In light of the Court's decision to initiate new matters for Boid and McKinney and to allow Gary, Boid and McKinney an opportunity to submit amended complaints, the Court finds it appropriate to advise Plaintiffs of their pleading obligations.

---

[6](...continued)
of Corrections, Civil No. 07-0687, 2007 WL 4563665, *3 (W.D. Okla. Dec. 7, 2007), Report and Recommendation adopted in pertinent part, 2007 WL 4563644 (W.D. Okla. Dec. 20, 2007).

[7] In the event Plaintiffs proceed with their individual actions and file their amended complaints, the Court may reconsider consolidation of these matters at that time if warranted.

11

### A. Pleading Requirements Under Rule 8

As noted supra, the PLRA, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous,[8] malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)); see also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). Thus, the Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower

---

[8] A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint as "frivolous" is an objective one. See Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

Recently, the Supreme Court further clarified the standard for summary dismissal in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center. The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that

13

> states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n] that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Iqbal, 129 S. Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court . . . can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.

Id. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1948. The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint is plausible. See id. at 1949-50; see also Twombly, 550 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that

14

applied to federal complaints before Twombly.[9]  See Fowler, 578 F.3d 203.

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'"  This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Fowler, 578 F.3d 203 (citations omitted).

Here, Plaintiffs' Complaint, consisting of generalities, fails to meet the requirements of Rule 8.[10]  Plaintiffs' amended

---

[9]  Under Conley, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Under this "no set of facts" standard, a complaint could effectively survive [dismissal] so long as it contained a bare recitation of the claim's legal elements.

[10]  For instance, it appears that Gary is challenging not an imposed discipline but a speculative possibility of such imposition.  Without Gary's clarification as to whether he is challenging a hypothetical scenario or an actually imposed discipline, and without him detailing the exact discipline imposed, the Court cannot conduct a meaningful screening of his pleadings.
     Furthermore, Gary's First Amendment claims are sketched in
(continued...)

complaints, if submitted, are expected to cure this deficiency by stating the relevant facts of the events that underlie each Plaintiff's claims, i.e., which Defendant did what and when, and what were the exact injuries that were suffered by the particular Plaintiff as a result of the Defendant's aforesaid acts.

### B.  Respondeat Superior Claims

In the instant Complaint, Plaintiffs' allegations against Defendant appear to be based on the employment positions held by these Defendants.  Such claims are facially insufficient.

The Iqbal Court made clear that a government official sued in his or her individual capacity for alleged constitutionally

---

[10](...continued)
the Complaint too vaguely to meet the pleading requirements. Prison inmates do not forfeit their constitutional right to freely exercise their religion when they enter the prison gates. See Cruz v. Beto, 405 U.S. 319 (1972) (per curiam).  Incarcerated inmates, however, enjoy their rights under a more limited framework than the average citizen.  See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).  Indeed, the fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates.  See DeHart v. Horn, 227 F.3d 47, 50-51 (3d Cir. 2000) (en banc).   An alleged restriction on an inmate's right to free exercise of religion will be upheld "if it is reasonably related to legitimate penological interests." O'Lone, 482 U.S. at 349 (citing Turner v. Safley, 482 U.S. 78, 89 (1987)).  Without Gary stating with clarity the nature of his religious beliefs and how these religious beliefs are in conflict with a certain prison program, as well as the nature of that program, the Court cannot intelligently establish whether his First Amendment claims have any merit, even if the Court takes all the sparse factual statements made in the Complaint as true.

tortious behavior cannot be held liable on a <u>respondeat superior</u> theory or on the basis of some general link to allegedly responsible individuals or actions. <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1948-49 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of <u>respondeat superior</u> . . . . [A] plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution. . . . [P]urpose rather than knowledge is required to impose [constitutional] liability on . . . an official charged with violations arising from his or her superintendent responsibilities"); <u>accord</u>, <u>e.g.</u>, <u>Richards v. Pennsylvania</u>, 196 Fed. App'x 82, 85 (3d Cir. 2006) (the court, in Section 1983 action alleging excessive force in arrest, agreed with a magistrate judge that plaintiff's "failure to allege personal involvement on the part of defendant [who was the deputy warden] proved fatal to [plaintiff's] claims"); <u>Sutton v. Rasheed</u>, 323 F.3d 236, 249 (3d Cir. 2003) ("[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" in order to be liable) (citing <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988)); <u>Johnstone v. United States</u>, 980 F. Supp. 148, 151-52 (E.D. Pa. 1997) (court <u>sua sponte</u> dismissed claims against government official because "there is no indication" that the officer "had any personal involvement in the alleged constitutional deprivations," and plaintiff therefore

17

could not "prove any set of facts that would entitle him to relief against [the officer]"). Consequently, Plaintiffs' assertions that Defendant held certain supervisory positions or had knowledge of the alleged wrongs are insufficient, since Plaintiffs failed to assert facts showing purposeful personal involvement by each Defendant.  See Iqbal, 129 S. Ct. at 1948-49.

Therefore, in the event Gary or Boid, or McKinney elects to submit an amended complaint, each should assert those facts showing personal purposeful involvement by each Defendants named in their amended complaints.

### III. CONCLUSION

For the foregoing reasons, joinder of Plaintiffs will not be allowed.  The instant matter, Civil Action No. 10-886, will be reserved for Plaintiff Gary, and the Clerk will be directed to open new and separate individual matters for Plaintiffs Boid and McKinney.  Each Plaintiff will be allowed an opportunity to submit his amended complaint stating that Plaintiff's individual claims and detailing the underlying facts.  Plaintiffs who failed to submit their complete in forma pauperis forms, i.e., Boid and McKinney, will be directed to submit such forms together with their amended complaints in the event they elect to submit such amended pleadings.  Plaintiff Gary will be assessed the

applicable filing fee, and the Court will direct the Clerk to file the Complaint in the instant matter.

An appropriate Order accompanies this Opinion.


       /s/ NOEL L. HILLMAN
       **NOEL L. HILLMAN**
       **United States District Judge**

Dated: JUNE 21, 2010
At Camden, New Jersey